# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| Watkins Incorporated, | Civil No. 0:15-cv-02688 (DSD-BRT) |
| Plaintiff, | **REDACTED MEMORANDUM OF** |
| v. | **LAW IN SUPPORT OF** |
| | **DEFENDANT MCCORMICK &** |
| McCormick & Company, Incorporated, | **COMPANY, INCORPORATED'S** |
| | **MOTION TO EXCLUDE** |
| Defendant. | **PLAINTIFF'S EXPERT, DONALD** |
| | **ALAN GOROWSKY, PURSUANT** |
| | **TO FEDERAL RULES OF** |
| | **EVIDENCE 702 AND 403** |

# **TABLE OF CONTENTS**

**Page(s)**

INTRODUCTION ................................................................................1

LEGAL STANDARDS .......................................................................4

I.    There Is No Reliable Basis for Mr. Gorowsky's Opinion 1 ........................5

    a.    The ██████████████████████████████████████████ Were Guesses and Are Not Reliable Metrics for Computing Alleged Damages. ......................................................................................5

    b.    Mr. Gorowsky's Opinion 1 is Also Unreliable Because He Based It on ████████████████████████████████████. ..........8

II.    Mr. Gorowsky's Opinion 2 Is Also Based on Nothing but Speculation and ██████████████████████ and Is Therefore Unreliable ................11

III.    Mr. Gorowsky's Opinion 3 Should Be Excluded, as It Is Not Supported by Sufficient Facts in the Record ....................................................17

    a.    There Is Insufficient Evidence to Raise a Triable Issue in Relation to Watkins's Disgorgement Claim, and Mr. Gorowsky's Opinion 3 (Proffered to Support That Claim) Is Based Upon Insufficient Facts. .....17

    b.    Mr. Gorowsky's Opinion 3 Also Ignores Evidence in the Record Showing That ██████████████████████ ....................22

    c.    Mr. Gorowsky's Opinion 3 Methodology Also Suffers from Other Serious Flaws. ...........................................................................25

IV.    Mr. Gorowsky's Opinions Also Should Be Excluded Under Rule 403 .....27

CONCLUSION ..................................................................................28

# <u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

**Cases**

*Balance Dynamics Corp. v. Schmitt Indus., Inc.*,
   204 F.3d 683 (6th Cir. 2000) ..................................................................20

*Blue Dane Simmental Corp. v. Am. Simmental Ass'n*,
   178 F.3d 1035 (8th Cir. 1999) ...............................................................10

*Concord Boat Corp. v. Brunswick Corp.*,
   207 F.3d 1039 (8th Cir. 2000) ...............................................................27

*Daubert v. Merrell Dow Pharms., Inc.*,
   509 U.S. 579 (1993)..........................................................................4, 5, 17

*Dependable Sales & Serv., Inc. v. TrueCar, Inc.*,
   394 F. Supp. 3d 368 (S.D.N.Y. 2019) ...................................................20

*Gen. Elec. Co. v. Joiner*,
   522 U.S. 136 (1997)..................................................................................5

*Group Health Plan, Inc. v. Philip Morris, Inc.*,
   188 F. Supp. 2d 1122 (D. Minn. 2002)..................................................10

*Guillory v. Domtar Indus. Inc.*,
   95 F.3d 1320 (5th Cir. 1996) ..................................................................27

*Hammann v. 1-800 Ideas.com, Inc.*,
   455 F. Supp. 2d 942 (D. Minn. 2006)......................................................9

*Hunt v. CNH Am. LLC*,
   511 Fed. App'x. 43 (2d Cir. 2013) .........................................................28

*Ill. Tool Works, Inc. v. Rust-Oleum Corp.*,
   955 F.3d 512 (5th Cir, 2020) ..................................................................20

*Infinity Headwear & Apparel, LLC v. Jay Franco & Sons, Inc.*,
   Case No. 15-CV-1259 (JPO), 2017 WL 3309724
   (S.D.N.Y. Aug. 2, 2017)........................................................................21

*Kemp v. Tyson Seafood Group, Inc.*,
   2000 WL 1062105 (D. Minn. Jul. 19, 2000) ....................................................11

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
   572 U.S. 118 (2014)......................................................................................19, 20

*Marmo v. Tyson Fresh Meats, Inc.*,
   457 F.3d 748 (8th Cir. 2006) ........................................................................4, 27

*Minn. Pet Breeders, Inc. v. Schell & Kampeter, Inc.*,
   41 F.3d 1242 (8th Cir. 1994) ..............................................................................19

*Mostly Media, Inc. v. U.S. West Comm'ns*,
   186 F.3d 864 (8th Cir. 1999) ..........................................................................7, 8

*Porous Media Corp. v. Pall Corp.*,
   110 F.3d 1329 (8th Cir. 1997) .......................................................................18, 19

*Retractable Techs., Inc. v. Becton Dickinson & Co.*,
   919 F.3d 869 (5th Cir. 2019) ..............................................................................19

*Russell v. Whirlpool Corp.*,
   702 F.3d 450 (8th Cir. 2012) ................................................................................4

*Select Comfort Corp. v. Tempur Sealy Int'l, Inc.*,
   Civil No. 13-2451-DWF/SER, 2016 WL 5496340
   (D. Minn. Sept. 28, 2016) ...........................................................................18, 26

*Shaw by Strain v. Strackhouse*,
   920 F.2d 1135 (3rd Cir. 1990)..............................................................................27

*Snac Lite, LLC v. Nuts 'N More, LLC*,
   Case No. 2:14-cv-01696-RDP, 2016 WL 6778268
   (N.D. Ala. Nov. 16, 2016) ..................................................................................20

*U.S. Salt, Inc. v. Broken Arrow, Inc.*,
   No. Civ. 07-1988, 2008 WL 2277602 (D. Minn. May 30, 2008) ..........10, 11, 15

*Verisign, Inc. v. XYZ.COM*,
   LLC, 848 F.3d 292 (4th Cir. 2017)......................................................................20

*In re Wholesale Grocery Prod. Antitrust Litig.*,
   946 F.3d 995 (8th Cir. 2019) ...........................................................................4, 5


**Statutes**

Lanham Act, 15 U.S.C. § 1117 (a) ...................................................................19, 20


**Other Authorities**

Federal Rule of Evidence 403 ...........................................................................27, 28

Federal Rule of Evidence 702 ...............................................................4, 26, 27, 28

Defendant McCormick & Company, Incorporated ("McCormick") hereby submits this Memorandum in support of its Motion to Exclude Plaintiff's Expert Donald Alan Gorowsky. As explained below, Mr. Gorowsky's opinions as to purported damages suffered by Watkins Incorporated ("Watkins" or "Plaintiff") should be excluded because they are based on guesswork, speculation and belief, and there are insufficient facts in the record to support those opinions.

## INTRODUCTION

Watkins competes with McCormick for the sale of ground black pepper. There is no dispute that the worldwide commodity price of black pepper experienced a steep increase starting in the summer of 2014. Watkins alleges in this action that, in response to that price spike, McCormick reduced the amount of ground black pepper in certain of its tins, while maintaining the size of the containers.[1] This allegedly occurred during the time frame from March 2015 through April 2016 (hereafter referred to as the "conduct period"). Watkins claims that this reduction in the amount of pepper resulted in 25% "non-functional slack fill" (essentially, 25% excess "air" space) in the McCormick products. Watkins claims, under the Lanham

---

[1] There is no dispute that McCormick reduced the stated label **weight** of certain ground black pepper tins, but that is not the basis for Watkins's claim. At all times, the **weight** of the contents was stated accurately on the labels. Rather, the gravamen of Watkins's claim is the allegation that the **volume** of the contents was insufficient to fill the containers adequately and that this was deceptive. McCormick denies the allegations of "slack-filling." However, the Court need not resolve such liability issues for purposes of this motion, which seeks to exclude the speculative and unsupported opinions of Watkins's damages expert.

Act and analogous state law, that this misled consumers and thereby allegedly resulted in "lost sales" and "lost profits" for Watkins.

Watkins has retained an accountant, Donald Gorowsky, to serve as its damages expert in this action. Mr. Gorowsky produced an "Expert Report on Damages," dated November 2, 2020 ("Report"), a copy of which is attached as Exhibit A to the Declaration of Paul D. Schmitt filed herewith.[2] On April 14, 2021, Mr. Gorowsky produced a "Supplement" to his Report ("Supplement"). Schmitt Decl., Ex. B. In the Report and at his deposition, Mr. Gorowsky expressly disclaimed providing any opinion regarding liability or causation.[3] *See, e.g.*, Report at 9 (█████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████"); *see also* Gorowsky Dep. (Schmitt Decl., Ex. C) at 39-44.

---

[2] Excerpts from deposition transcripts and deposition exhibits are also attachments to the Schmitt Declaration. Transcript excerpts are referred to in this Memorandum as "[Name] Dep.," and deposition exhibits are referred to as "Dep. Ex. __."

[3] Notwithstanding his disclaimer of opining on liability, Mr. Gorowsky provides several lengthy narratives in his Report concerning his understanding of what he calls the "facts." Report at 14-26. As discussed below, these often reflect simple reliance on what ██████████████████████████████████

Mr. Gorowsky offers three opinions regarding Watkins's alleged damages, which can be summarized as follows:[4]

- **Opinion 1:** ████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████

- **Opinion 2:** ████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████

- **Opinion 3:** ████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████

Each of these opinions should be excluded for the reasons explained below.

---

[4] *See* Report at 13-14; Supplement at 1-3.

## LEGAL STANDARDS

Under Federal Rule of Evidence 702, an expert may only testify if (1) "the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue"; (2) "the testimony is based on sufficient facts or data"; (3) "the testimony is the product of reliable principles and methods"; **and** (4) "the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702 (emphasis supplied).

As the Supreme Court explained in *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 597 (1993), the district court has a "gatekeeping role" in determining whether or not expert testimony is admitted. In fulfilling that gatekeeping role, the court must "ensur[e] that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Russell v. Whirlpool Corp.*, 702 F.3d 450, 456–57 (8th Cir. 2012) (quoting *Kumho Tire Co. v. Carmichael,* 526 U.S. 137, 141 (1999)). "To show that the expert testimony is relevant, the proponent must show that the reasoning or methodology in question is applied properly to the facts in issue." *Marmo v. Tyson Fresh Meats, Inc.*, 457 F.3d 748, 758 (8th Cir. 2006).

"Under *Daubert*, any step that renders the analysis unreliable renders the expert's testimony inadmissible. This is true whether the step completely changes a reliable methodology or merely misapplies that methodology." *In re Wholesale Grocery Prod. Antitrust Litig.*, 946 F.3d 995, 1000–01 (8th Cir. 2019) (citations and

internal quotation marks omitted).  "When the analytical gap between the data and proffered opinion is too great, the opinion must be excluded."  *Id.*  "[N]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert." *Gen. Elec. Co. v. Joiner,* 522 U.S. 136, 146 (1997).

## I.   There Is No Reliable Basis for Mr. Gorowsky's Opinion 1.

### a. The ███████████████████████████████████████████
███████████ **Were Guesses and Are Not Reliable Metrics for Computing Alleged Damages.**

As to Opinion 1 (████████████████████████████████

█████████████████████████████████████████████████████

██████████████████████████████████████████ Rigley Dep. (Schmitt Decl., Ex. J) at 29-30; O'Leary Dep. (Schmitt Decl., Ex. I) at 95-96.  Even Mr. Gorowsky agreed at his deposition that ████████████████████

██████████████████████ Gorowsky Dep. at 78.

████████████████████████████████████████████

█████████████████████████████████████████████████████

█████████████████████████████████████████████████████

This methodology is not reliable, as the projections Mr. Gorowsky relied upon as a metric were utterly speculative. █████████████████████████████

█████████████████████████████████████████████████████

5

████████████████████████████████████████████████████████████

██████████████████████ M. Jacobs Dep. (Schmitt Decl., Ex. G) at 75; I. Jacobs Dep.

(Schmitt Decl., Ex. F) at 24; Fehr Dep. Vol. I. (Schmitt Decl., Ex. D) at 121.

Moreover, Watkins's internal business records and the testimony of its

personnel confirm that █████████████████████████████ Watkins's former

CFO, Michelle Fehr, testified that █████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████ Fehr Dep. Vol. I at 39, 57-58. But

when Mr. Rigley was asked ██████████████████████████████████████

██████████████████████████ Rigley Dep at. 72-73. Evidence in the record

shows that ███████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

Dep. Ex. 69 (Schmitt Decl., Ex. M). Importantly, ████████████████████

██████████████████████████████████ Fehr Dep. Vol. I at 45. Even

Ms. Fehr testified that ███████████████████████████████ Fehr Dep.

Vol. I at 48-49; Dep. Ex. 113 (Schmitt Decl., Ex. O). Mr. Rigley testified that ███

████████████████████████████████████ Rigley Dep. at 91-93.

Additionally, even putting aside t█████████████████████████████

███████████████████████████████████████████████████████

██████████████████████████████ As Mark Jacobs, Watkins's CEO, testified:

███████████████████████████████████████████
███████████████████████████████████████████
███████████████████████████████████████████
███████████████████

M. Jacobs Dep. at 75 (emphasis supplied).  This common-sense proposition that measuring profits for a new business venture is inherently speculative also has been recognized by the Eighth Circuit, which held in *Mostly Media, Inc. v. U.S. West Comm'ns*, 186 F.3d 864, 867 (8th Cir. 1999):

> The burden of proof required of a plaintiff in a lost-profits case is admittedly heavy, and the plaintiffs in this case have not met it. . . .  The [trial period] was a new and unproved business opportunity.  No one knew whether it would work, and, in fact, it did not.  The business plans developed by [the plaintiff and a rival company] were nothing more than optimistic projections for an enterprise that never got off the ground . . . .

As noted previously, ████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████ As a practical matter, █████████████████████

████████████████████████████████████████████████████

████████████████████████████████ O'Leary Dep. at 45-48.  The

record contains no details regarding ████████████████████████ ████████████████████ and the Eighth Circuit's holding in *Mostly Media* discrediting the use of forecasts regarding new and unproved business opportunities as a basis for computing "lost profits" applies equally to this alternative methodology used by Mr. Gorowsky. Because both the ██████████████████████ were mere speculation, Mr. Gorowsky's Opinion 1 relying on them to compute purported "lost profits" should be excluded.[5]

### b. Mr. Gorowsky's Opinion 1 is Also Unreliable Because He Based It on ████████████████████████████████

Mr. Gorowsky failed to do any independent analysis of ████████████████ ████████████████████ Mr. Gorowsky ██████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

---

[5] ██████████████████████████████████ were not only highly speculative—they also ████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████ Dep. Ex. 67 (Schmitt Decl., Ex. L); Rigley Dep. at 81-85.

███████████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████████████████████████ As Mr. Gorowsky put it:

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

██████████████████████

Report at 44-45 (emphasis supplied).[6]  ██████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

In other words, despite having firmly disclaimed offering any expert opinion as to

causation, Mr. Gorowsky acts as a mere mouthpiece giving voice to ████████████

██████████████████████████████ Such "opinions" do not meet the

standard for proper expert testimony and should be excluded.  *See Hammann v. 1-*

*800 Ideas.com, Inc.*, 455 F. Supp. 2d 942, 948 (D. Minn. 2006) ("Damages for lost

profits, especially for a relatively new business venture, must be supported by

specific, concrete evidence, not by mere 'speculation and conjecture.'") (citing

---

[6] Mr. Gorowsky agreed at his deposition that ██████████████████████████
███████████████████████████████████████████████████
██████████████ Gorowsky Dep. at 77.

9

*Mostly Media, Inc. v. U.S. W. Commc'ns*, 186 F.3d 864, 866 (8th Cir. 1999) (noting that plaintiff's "burden of proof . . . in a lost-profits case is admittedly heavy" and affirming district court's ruling that damages proof was too speculative)).

In *U.S. Salt, Inc. v. Broken Arrow, Inc.*, No. Civ. 07-1988, 2008 WL 2277602 at *1 (D. Minn. May 30, 2008), this Court excluded an expert's testimony precisely because the expert (Cobb) "relied almost exclusively on the assumptions and estimates provided by [the plaintiff's] president and owner" (Johnson) by "simply adopt[ing] Johnson's opinion as to U.S. Salt's expected sales and the nature of the market" which were "speculative at best[.]"  As the court explained:

> In the Court's view, Johnson's assumptions and estimates as to U.S. Salt's expected sales were nothing more than optimistic projections. And Cobb's wholesale acceptance of Johnson's projections without any verification of these estimates or any independent market analysis is simply too speculative to submit to a jury. . . . In neither his expert reports nor his depositions could Cobb identify a reliable factual basis for his opinions regarding U.S. Salt's expected sales, demand for solar salt, or the market conditions in Minnesota. Accordingly, the Court excluded Cobb's unreliable testimony regarding lost profits.

*Id*. at *2; *see also Blue Dane Simmental Corp. v. Am. Simmental Ass'n*, 178 F.3d 1035, 1043 (8th Cir. 1999) (upholding judgment for defendant where plaintiff's evidence established only "that [plaintiffs] believed that their sales had dropped because of the introduction of [defendant's product]."); *Group Health Plan, Inc. v. Philip Morris, Inc.*, 188 F. Supp. 2d 1122, 1134 (D. Minn. 2002) (excluding expert whose causation and damages model merely "bless[ed] a guess-based theory.");

*Kemp v. Tyson Seafood Group, Inc.*, No. Civ. 5-96-173 JRT/RLE, 2000 WL 1062105, at *5 (D. Minn. Jul. 19, 2000) ("an expert's mere belief in the legitimacy of his opinions is insufficient to allow the admissibility of the conclusions reached"); *see also id*. at *7 ("Experts are now held to a level of accountability, that requires factual predicates, in historical fact, or in competent evidence, which allows a factfinder to independently verify the accuracy of the expert's results. Absent such reliable verification, the expert's opinion is not admissible.")

Because Mr. Gorowsky's Opinion 1 is based on speculation, lacks any independent analysis and ███████████████████████, it is unreliable and should be excluded.

## II.   Mr. Gorowsky's Opinion 2 Is Also Based on Nothing but Speculation and ████████████████████████████████████

As for Opinion 2 ███████████████████████████████████

████████████████████████████████████████████████

████████████████████████ are based upon the speculative **assumption** that the

████████████████████████████████████████████████

████████████████ and the further speculative **assumption** that ████████████

████████████████████████████████████████████████

████████████████.[7]

---

[7] The points raised in the preceding section apply equally to Opinion 2, as Opinion 2 relies on the same projections for the test program as Opinion 1.

First, it is undisputed that ████████████████████████

████████████████████████████████████████████████████

████████████████████████ Fehr Dep. Vol. I at 60, 68.  Indeed, ████████

████████████████████████████████████████████████████

████████████████████ Rigley Dep. at 31-32; Fehr Dep. Vol. I at 105.  The Walmart

buyer testified that ████████████████████████████████████

O'Leary Dep. at 95-96.[8]

Mr. Gorowsky did **no analysis** to support the **assumptions** that ██████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████ When asked about his assumptions at his deposition, Mr.

Gorowsky testified:

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████

█

████████████████████████████████████

██████████████████████████

---

[8] Mr. Rigley testified that ████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████ Rigley Dep. at 29-30.

Gorowsky Dep. at 93.[9]  Assumptions based solely upon █████████████████

████████████████ are not a reliable basis for expert testimony.  *See, e.g., 3M*

*Innovative Props.*, 361 F. Supp. 2d 958, 973 (D. Minn. 2005) (testimony was an

insufficient evidentiary basis on which to avoid summary judgment because it

established only the witness's assumption or belief that lost sales could be attributed

to defendant's advertising) (citing *Blue Dane*, 178 F.3d at 1043 (upholding judgment

for defendant where plaintiff's evidence established only "that they believed that their

sales had dropped because of the introduction of [defendant's product].")).

Mr. Gorowsky also did no independent analysis of ████████████████

████████████████████████████ As he testified at his deposition:



---

[9] Watkins's personnel testified at deposition that ████████████████████████
████████████████████████████ Rigley Dep. at 32, 152; I. Jacobs Dep. at
140-41.  Walmart's buyer testified that s███████████████████████████
████████████████████████████ Keeter Dep. (Schmitt Decl., Ex. H) at 41-42;
I. Jacobs Dep. at 40-41. ████████████████████████
████████████ I. Jacobs Dep. at 47-48.



Gorowsky Dep. at 84-86.  Obviously, Mr. Gorowsky did no independent analysis to

support the dubious use of ███████████████████████████████████

███████████████████████████████████████████ He

openly admitted repeatedly that ████████████████████████ *See e.g.*:



- Report at 40 ████████████████████████████████
████████████████████████████████████████████████
██████████████████████████

- *id*. at 41 ███████████████████████████████████
████████████████████████████████████████████████
██████████████████████████████████

- *id*. at 42 █████████████████████████████████████
███████████████████████.

- *id*. at 43 █████████████████████████

- *id*. at 47 ██████████████████████████████████.

- *id*. at 50 ██████████████████████████████████
████████████████████████████████████████████████
██████████████████████

Like the expert's reliance on the company president's assumptions in *U.S. Salt*, Mr.

Gorowsky's "wholesale acceptance" of ████████████ "projections without any

verification of these estimates or any independent market analysis is simply too

speculative to submit to a jury." *U.S. Salt,* 2008 WL 2277602, at *2.  Therefore, Mr.

Gorowsky's so-called "Opinion" 2 is not proper expert testimony, and it should be

excluded.

15

In choosing to simply accept ████████████████████████████████

████████████████████████████████████, Mr. Gorowsky also decided to

ignore evidence of ████████████████████████████████████████

██████████████████████████████████████████ For example,

Mr. Gorowsky chose to ignore that, ████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████ Rigley Dep. at

24-25. At his deposition, Mr. Gorowsky ██████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████ Gorowsky Dep. at 79-80, 83. He also was

unaware that ████████████████████████████████████████████████

██████████████████████████████████████████████ *Id*. at

101-02. Instead, he described how ████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████ *Id*. at 76. As noted above, that so-called

████████████████████████████████████████ Mr. Gorowsky's

16

Opinion 2, like his Opinion 1, is based on nothing but ███████ speculation and should be excluded under *Daubert*.

### III. Mr. Gorowsky's Opinion 3 Should Be Excluded, as It Is Not Supported by Sufficient Facts in the Record.

#### a. There Is Insufficient Evidence to Raise a Triable Issue in Relation to Watkins's Disgorgement Claim, and Mr. Gorowsky's Opinion 3 (Proffered to Support That Claim) Is Based Upon Insufficient Facts.

Mr. Gorowsky's Opinion 3 is his effort to calculate ████████



███████.[10]  The legal theory underlying this computation is Watkins's contention that McCormick received "ill-gotten gains" ████████ ███████████by virtue of the alleged conduct and should be required to disgorge those "gains" to Watkins.  There are insufficient facts in the record to support any such claim or to provide any basis for Mr. Gorowsky's Opinion 3.[11]

There is no evidence that ████████████████

_____

[10] ████████████████████████

[11] By a separate motion, McCormick seeks summary judgment on all of Watkins's claims, including the claim for disgorgement.

result of the alleged conduct, nor does Mr. Gorowsky make any effort to establish either of those propositions. He also does not purport to opine that any part of McCormick's profits ███████████████ was attributable to the alleged conduct or that ███████████████ were diverted to McCormick from Watkins. (Again, he disclaims any opinions as to causation or liability.) Instead, he calculates what he considers ███████████████

███████████████████████████████

██████ and then argues that ███████████████

███████████████    Report at 52 n.124; Gorowsky Dep. at 125, 134-37. As explained below, Watkins's approach is not consistent with Supreme Court and Eighth Circuit case law, both of which require the **plaintiff** to prove (not just assume) that any injury was proximately caused by the alleged "false advertising."

This is not a comparative advertising case. Controlling Eighth Circuit case law therefore requires that the **plaintiff** prove injury-in-fact and causation—these elements cannot just be assumed, as this would result in a windfall for the plaintiff. *See Porous Media Corp. v. Pall Corp.*, 110 F.3d 1329, 1335-36 (8th Cir. 1997) ("In a suit for money damages where a defendant misrepresented its own product but did not specifically target a competing product, plaintiff may be only one of many competitors, and without proof of causation and specific injury each competitor might receive a windfall unrelated to its own damage."); *Select Comfort Corp. v.*

*Tempur Sealy Int'l, Inc.*, Civil No. 13-2451-DWF/SER, 2016 WL 5496340, at *3 (D. Minn. Sept. 28, 2016). The Supreme Court of the United States also has held that, to have a Lanham Act claim, the **plaintiff** must show injury "**proximately caused** by violations of the statute," that is, the **plaintiff** must show that the injury "flow[s] **directly** from the deception wrought by the defendant's advertising." *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 132-33 (2014) (emphasis supplied) ("No party disputes that it is proper to read § 1125(a) as containing such a requirement, its broad language notwithstanding.")

Under the Lanham Act, a claim for disgorgement may serve as an alternative form of **compensation**, but the law provides that disgorgement shall not be used as a penalty, and it should not be a windfall for the plaintiff. 15 U.S.C. § 1117 (a); *Porous Media, supra*; *Minn. Pet Breeders, Inc. v. Schell & Kampeter, Inc.*, 41 F.3d 1242, 1247 (8th Cir. 1994). This means that the **plaintiff** seeking disgorgement also must prove injury proximately caused by a defendant's wrongful conduct, *i.e.*, that the defendant benefitted as a direct result of the alleged wrongful conduct and that any such "ill-gotten gains" came at the plaintiff's expense. *See Retractable Techs., Inc. v. Becton Dickinson & Co.*, 919 F.3d 869, 877 (5th Cir. 2019) (beyond liability and equitable factors, plaintiff seeking disgorgement must show that the defendant benefitted from the false advertising and also that the profits were the result of sales

diverted from the plaintiff, as opposed to other players in the market); *Balance Dynamics Corp. v. Schmitt Indus., Inc.*, 204 F.3d 683, 695 (6th Cir. 2000) (same).

███████████████████████████ 15 U.S.C. § 1117(a), which provides in part: "In assessing profits the plaintiff shall be required to prove defendant's sales only; defendant must prove all elements of cost or deduction claimed." To the extent that some cases may have interpreted this statutory language as placing the burden on the defendant to disprove **proximate causation** of injury in connection with disgorgement claims, no such interpretation can survive after the Supreme Court's decision in *Lexmark*. *See, e.g., Ill. Tool Works, Inc. v. Rust-Oleum Corp.*, 955 F.3d 512 (5th Cir, 2020) (verdict awarding disgorgement of profits was vacated due to plaintiff's failure to prove causal connection between false advertising and defendant's profits); *Verisign, Inc. v. XYZ.COM,* LLC, 848 F.3d 292, 300-01 (4th Cir. 2017) (affirming summary judgment for defendant on Lanham Act damages and disgorgement claims in light of *Lexmark* where plaintiff failed to prove diversion proximately caused by false advertising); *Dependable Sales & Serv., Inc. v. TrueCar, Inc.*, 394 F. Supp. 3d 368, 371-75 (S.D.N.Y. 2019) (granting summary judgment on disgorgement claim in light of *Lexmark*, where plaintiff failed to provide evidence of an injury proximately caused by the defendant); *Snac Lite, LLC v. Nuts 'N More, LLC*, Case No. 2:14-cv-01696-RDP, 2016 WL 6778268, at *14 (N.D. Ala. Nov. 16, 2016) (acknowledging the statutory language that plaintiff must

prove "defendant's sales only" and that defendant "must prove all elements of cost or deduction. But "[w]hile this is the case, a plaintiff is not entitled to disgorgement until the plaintiff has proved causation. As such, a plaintiff is only entitled to apportionment of a defendant's profits after providing evidence to establish that the alleged false advertising caused some injury to the plaintiff.") (citations omitted); *Infinity Headwear & Apparel, LLC v. Jay Franco & Sons, Inc.*, Case No. 15-CV-1259 (JPO), 2017 WL 3309724, at *6 (S.D.N.Y. Aug. 2, 2017) (Lanham Act disgorgement claim requires showing of injury proximately caused by the alleged false advertising, and reliance upon expert's determination of defendant's revenues is insufficient, because "[e]xpert calculations that presume liability do not, in and of themselves, establish that an injury occurred) (citing *Lexmark*).

Here, Mr. Gorowsky did no analysis whatsoever attempting to ██████████ ██████████████████████████████████████████ As he testified:

██████████████████████████████████████████
██████████████████████████████████████████
████████████████████████████████████████
█
██████████████

██████████████████████████████████████████████

████████████████████████████████████

████████████████████████████████████████
██████████████████████████████
█
██████████████

Gorowsky Dep. at 125.  He also offered no opinion as to whether ██████████ ████████████████████████████████████████████████████████ ████████████████████ nor did he do any analysis showing that a ██████ ███████████████████████████████████████████ *See* Gorowsky

Dep. at 134, 136-37.  Indeed, as previously noted, he expressly disclaimed offering

any opinion at all on causation.  *Id*. at 41-44; Report at 9.

> **b. Mr. Gorowsky's Opinion 3 Also Ignores Evidence in the Record Showing That ██████████████████████████**

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

███████████████████████████████ Watkins's records refute any suggestion

of ██████████████████████████████████████████ *See*

Dep. Ex. 133 (Schmitt Decl. Ex. P).   Indeed, they reflect **exactly the opposite**: *i.e.*,

████████████████████████████████████████████

███████████████████████████████ Gorowsky Dep.

at 143-46.  A review of Exhibit 133 (████████████████████ – *see* Fehr

Dep. Vol. II (Schmitt Decl., Ex. E), at 188-191),████████████████████

████████████████████████████████████████████

██████████████████ reveals:



In its pleadings and discovery responses, however, Watkins described its sales at Target during the damages period as a "success," MDL Dkt. #57 at ¶ 58; Dep. Ex. 99 (Schmitt Decl., Ex. N) at 13. There is no evidence that W█████████████████████████████████████████████████████████████████ *See* Report of McCormick's expert, John H. Johnson, IV (Schmitt Decl., Ex. K, "Johnson Report"), at 24-25. As for Walmart, the flaws in Mr. Gorowsky's opinions have been discussed at length already.

Although Mr. Gorowsky deliberately avoids these highly relevant comparisons to ███████████████████████████████████████████ he notes that ████████████████████████████████████████████████████████████████████ He did no independent analysis as to ████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ Report at 34. As previously discussed, simply parroting ████████████████ about such matters is not proper or reliable expert testimony.[13]

The data in the record also show that, w████████████████████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████—exactly the opposite of what Watkins's theory

---

[13] Mr. Gorowsky also recounts how ████████████████████████████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████ ████████████████████ *Id.* at 52. The extent of the compound speculation that Mr. Gorowsky is willing to accept on faith is truly extraordinary.

of disgorgement would require.  *See* Johnson Report at 28-29; *see also* Rigley Dep. at 170-71 (█████████████████████████████████████████

███).  Mr. Gorowsky is careful to avoid any such comparisons to ██████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████   That is not a proper foundation for expert

testimony.

### c.  Mr. Gorowsky's Opinion 3 Methodology Also Suffers from Other Serious Flaws.

Mr. Gorowsky's calculations are also seriously flawed in multiple other ways.

For example, (1) he includes in his calculations of McCormick's profits ███████

████████████████████████████████████████████████████████████

████████████████████████;[14] (2) he includes ███████████████████████

████████████████████████████████████████████████████████████

█████████████████[15] (3) he assumed, without evidentiary support and defying

common sense, that ███████████████████████████████████████████

---

[14] Gorowsky Dep. at 132. █████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████

[15] For example, ████████████████████████████████████████████████

████████████████████████████████████████████████████████████

███████████████████████ Gorowsky Dep. at 127-31.

██████████████████████████; and (4) he took no account of the fact that ███

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████.[16]  *See Select Comfort,* 2016 WL 5496340, at *8

(expert's opinions regarding lost profits held inadmissible where the expert failed to

take into account the presence of other competitors or other local competitive

effects); Gorowsky Dep. at 90 (admitting he does not even know ███████████

██████████████████████████████████████████).

At bottom, Mr. Gorowsky's Opinion 3 is not grounded in sufficient facts in

the record.  He declines to offer any opinion at all on causation (*i.e.*, ███████

████████████████████████████████████████████

████████████.  Instead, he **assumes** that causation will be proven by other

evidence—but there is none other than ███████████████████  And he

ignores facts and data in the record that refute the theory of unjust enrichment that

he purports to support with his calculations.  Speculation and highly implausible

assumptions are not a sufficient basis for expert testimony.  *See* Fed. R. Ev. 702 (b)

---

[16] Mr. Gorowsky did not study ████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
███████████████████████████████████████
Gorowsky Dep. at 90-91.

(expert testimony must be "based on sufficient facts or data"); *Marmo v. Tyson Fresh Meats, Inc.*, 457 F.3d 748, 757 (8th Cir. 2006) (expert testimony is inadmissible if it is "speculative, unsupported by sufficient facts, or contrary to the facts of the case"); *Concord Boat Corp. v. Brunswick Corp.*, 207 F.3d 1039, 1055-57 (8th Cir. 2000) (plaintiff must provide evidence of facts that support the applicability of the expert's opinion to the case); *Guillory v. Domtar Indus. Inc.*, 95 F.3d 1320, 1330-31 (5th Cir. 1996) (expert testimony held properly excluded where it was not based upon facts in the record); *Shaw by Strain v. Strackhouse*, 920 F.2d 1135, 1142 (3rd Cir. 1990) (expert's opinions were properly disregarded where they assumed facts not supported by the record).

In short, Mr. Gorowsky's Opinion 3 is not based on "sufficient facts or data" and would not "help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Ev. 702.  It should be excluded.

## IV.  Mr. Gorowsky's Opinions Also Should Be Excluded Under Rule 403.

There is an additional reason why Mr. Gorowsky's opinions and testimony should be excluded.  Pursuant to Federal Rule of Evidence 403, whatever probative value his calculations might have is far outweighed by the likelihood of prejudice and confusion.  His calculations superficially—but erroneously—may appear to represent compensation for harm to Watkins, when, in fact, there is no competent evidence of such harm.  Nor is there a sufficient evidentiary basis to show any causal

connection between those calculations and any purported injury to Watkins. *See Hunt v. CNH Am. LLC*, 511 Fed. App'x. 43, 47 (2d Cir. 2013) (expert opinions properly excluded under Rule 702 because they were speculative and not well supported, but also under Rule 403 because their probative value was substantially outweighed by the danger of unfair prejudice, confusion of the issues, and misleading the jury).

## CONCLUSION

For the reasons and upon the authorities set forth above, the opinions and testimony of Watkins's expert, Donald Gorowsky, should be excluded.

Dated:  April 27, 2021                    /s/ Richard R. Voelbel
                                          Richard R. Voelbel, #0387091
                                          Felhaber Larson
                                          220 South Sixth Street, Suite 2200
                                          Minneapolis, MN  55402-4504
                                          Tel: (612) 373-8544
                                          Fax: (612) 338-0535
                                          rvoelbel@felhaber.com

                                          /s/ David H. Bamberger
                                          David H. Bamberger *pro hac vice*
                                          david.bamberger@dlapiper.com
                                          Paul D. Schmitt *pro hac vice*
                                          paul.schmitt@dlapiper.com
                                          DLA PIPER LLP (US)
                                          500 Eighth Street, NW
                                          Washington, DC 20004
                                          Tel:   (202) 799-4500
                                          Fax:   (202) 799-5500

                                          *Attorneys for Defendant*
                                          *McCormick & Company, Incorporated*