UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Watkins Incorporated,<br><br>Plaintiff,<br><br>v.<br><br>McCormick and Company, Incorporated,<br><br>Defendant. | Case No. 15-cv-2688 (DSD/ECW)<br><br><br><br>**ORDER** |

This case is before the Court on "Defendant McCormick & Company, Incorporated's Motion to Strike Watkins Incorporated's Third Amended Initial Disclosures and Exclude an Untimely Disclosed Witnesses [sic]" ("Motion"). (Dkt. 139.) For the reasons stated below, the Court grants the Motion.

## I.   BACKGROUND

On June 9, 2015, Plaintiff Watkins Incorporated filed this action in this Court asserting counts for unfair competition and misleading and deceptive advertising, promotion, and trade practices under the Lanham Act and various states' laws with regard to Defendant McCormick & Company, Incorporated's alleged "nonfunctional slack-fill" of its black ground pepper tins. (*See generally*, Dkt. 1.)[1]  "Slack-fill is the difference between the actual capacity of a container and the volume of product contained therein." (*Id.* ¶ 28 (citing 21 C.F.R. § 100.100).)  Plaintiff, which produces and sells black ground pepper, further alleged that "[o]n information and belief, consumers have relied upon,

---

[1]   Unless otherwise noted, page number citations are to the CM/ECF pagination.

and are continuing to rely upon, the traditional size of the tins as the basis for making a purchasing decision and believe the tins contain the same traditional fill rather than the reduced slack-fill that they cannot see in the nontransparent tin." (*Id.* ¶¶ 1, 25.)

On August 10, 2015, Defendant filed a Notice of Motion for Transfer Before the Judicial Panel on Multidistrict Litigation ("JPML"), and on August 13, 2015, the parties filed a stipulation to stay this case pending resolution of the motion to transfer by the JPML. (Dkts. 21, 22.) On August 14, 2015, United States District Judge David S. Doty approved the parties' stipulation, and as a result, this case was stayed and thereafter transferred to the JPML, District of Columbia, which remanded the case back to this Court on December 27, 2019. (Dkts. 23, 25, 26.)

On July 16, 2020, a Pretrial Scheduling Order was entered in this case, setting several deadlines and requiring the parties to make any updates to their initial disclosures by August 3, 2020 and to complete fact discovery by September 1, 2020. (Dkt. 34 at 2.) On August 3, 2020, Plaintiff filed a Motion to Compel Discovery, which was denied on August 24, 2020. (Dkts. 36, 52.) The order denying that motion permitted Defendant to "file a proposal regarding the limitations for any additional fact discovery Defendant believe[d was] necessary," leading to Defendant to filing the proposal on September 7, 2020 as to Plaintiff's "'disgorgement' claim under the Lanham Act." (Dkt. 52 at 13; Dkt. 55.) On September 15, 2020, a First Amended Pretrial Scheduling Order was entered, leaving the deadline for updates to initial disclosures as August 3, 2020, and modifying the deadline for fact discovery to December 15, 2020 to the extent it related to follow-up discovery flowing from Plaintiff's Motion to Compel Discovery. (Dkt. 57 at 3.)

On October 13, 2022, Defendant sought to obtain dates to schedule a hearing regarding a motion to strike Plaintiff's Third Amended Initial Disclosures and to exclude witnesses and was ordered to first move to amend the First Amended Pretrial Scheduling Order given that the deadline for filing non-dispositive motions had long passed. (Dkt. 132.) On November 14, 2022, this case was reassigned to the undersigned, who held a status call regarding Defendant's anticipated motion to strike on November 17, 2022. (Dkts. 135, 137.) During that status call, the parties stipulated to, and the Court approved, the filing of the motion to strike without an amendment of the First Amended Pretrial Scheduling Order in view of the fact that the motion was based on disclosures served in September 2022. (Dkt. 137.) On December 2, 2022, this Motion followed.

The disputed aspect of the Third Amended Initial Disclosures is paragraph (j), the disclosure of Jacquelynn Karau, a Quality Assurance Manager at Plaintiff, who performed analyses of Plaintiff's and Defendant's pepper tins in May and June 2015, around the same time Plaintiff filed this lawsuit. (Dkt. 140 at 4, 68-11 & n.2; Dkt. 142-1, Ex. 1 at 2; Dkt. 142 ¶ 2.h-j; Dkts. 142-1 at 45-63 (Exs. 8-10).) The documents at issue ("the Documents") constitute photos of Karau's analyses, the underlying data, and three emails referencing the analyses, data, and photos, including one email marked as an exhibit by Defendant when deposing Plaintiff's employee Michelle Fehr. (*See* Dkt. 142 ¶ 2.a; Dkt. 142-1, Ex. 1 at 2; Dkt. 142-1 at 45-63 (Exs. 8-10).) They describe the methodology used by Karau when measuring and analyzing the pepper tins and contain Karau's handwritten notes regarding her measurements and her findings and conclusions. (*See* Dkt. 142-1, Ex. 1 at 2; Dkt. 142-1 at 45-63 (Exs. 8-10).) The Documents include

statements such as: "[h]ad to tap tin to refill after weighing," "[d]id not tap tin to refill after weighing," "had to tap tin during refiling," "did not tap tin during refiling," "[t]he percent retained per screen/found in the pan indicate the coarseness of the pepper. A higher percentage found in the pan indicates a finer pepper," and "[c]onclusion: no appreciable difference between the 8 oz and 6 oz pepper." (Dkt. 142-1 at 45-63 (Exs. 8-10.)

According to Plaintiff's Third Amended Initial Disclosures, "[a]ny testimony will be limited to foundation of these documents, if necessary." (Dkt. 142-1, Ex. 1 at 2.) However, Defendant asks the Court, pursuant to Federal Rule of Civil Procedure 37(c)(1), to strike Plaintiff's Third Amended Initial Disclosures and exclude Karau's trial testimony on the grounds that Karau's anticipated testimony will go beyond foundation and authentication. (Dkt. 139 at 1; Dkt. 140 at 1.) Defendant also contends that permitting Karau to testify would be highly prejudicial and that the prejudice cannot be cured by deposing Karau. (Dkt. 140 at 10-11.) Trial is set for May 1, 2023, with motions in limine due on April 10, 2023 and responses due on April 17, 2023. (Dkt. 131 at 1-3.)

## II.     LEGAL STANDARD

Rule 26 of the Federal Rules of Civil Procedure governs the scope of discovery. *See* Fed. R. Civ. P. 26. Under Rule 26(a)(1)(A)(i), a party to a litigation must provide other parties "the name, and if known, the address and telephone number of each individual likely to have discoverable information--along with the subjects of that information--that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment[.]" Fed. R. Civ. P. 26(a)(1)(A)(i). Pursuant to

4

Rule 26(e), a party that has made a disclosure under Rule 26(a) or that has responded to discovery requests, must supplement or correct its disclosure or response "in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." Fed. R. Civ. P. 26(e)(1)(A).

"If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). "Because Rule 37(c) sanctions are mandatory, the rule contains exceptions for 'substantially justified' or 'harmless' violations to 'avoid unduly harsh penalties that may result from an inflexible application of the Rule.'" *United States ex rel. Fesenmaier v. Cameron-Ehlen Grp., Inc.*, No. 13-CV-3003 (WMW/DTS), 2021 WL 101193, at *22 (D. Minn. Jan. 12, 2021) (quoting *Transclean Corp. v. Bridgewood Servs., Inc.*, 101 F. Supp. 2d 788, 795 (D. Minn. 2000)).

"[A] critical consideration [is] the prevention of unfair surprise." *Transclean*, 101 F. Supp. 2d at 795 (citing *Sylla-Sawdon v. Uniroyal Goodrich Tire Co.*, 47 F.3d 277, 284 (8th Cir. 1995)). District courts therefore consider four factors when determining whether a violation was substantially justified or harmless under Rule 37(c): "'[1] the importance of the excluded material; [2] the explanation of the party for its failure to comply with the required disclosure; [3] the potential prejudice that would arise from allowing the material to be used . . .; and [4] the availability of a continuance to cure such

5

prejudice.'" *Fesenmaier*, 2021 WL 101193, at *22 (quoting *Transclean*, 101 F. Supp. 2d at 795-96); *see also Bison Advisors LLC v. Kessler*, No. CV 14-3121 (DSD/SER), 2016 WL 3525900, at *2 (D. Minn. Jan. 21, 2016) (same factors). "[T]he exclusion of evidence is a harsh penalty and should be used sparingly." *Wegener v. Johnson*, 527 F.3d 687, 692 (8th Cir. 2008) (quoting *ELCA Enters. v. Sisco Equip. Rental & Sales*, 53 F.3d 186, 190 (8th Cir. 1995)).

## III.   ANALYSIS

### A.   The Parties' Arguments

In its brief, Defendant seeks exclusion because: (1) the disclosure of Karau on September 26, 2022 is untimely, "as it comes over two years after both the close of fact discovery and the Court's deadline to amend disclosures"; (2) there is no justification for the belated disclosure; and (3) allowing Karau to testify would be highly prejudicial to Defendant. (Dkt. 139 at 1; Dkt. 140 at 7-11.) Defendant contends that, contrary to Plaintiff's contention, Karau's anticipated testimony about the Documents is well beyond "foundational" in nature. (Dkt. 140 at 5, 8-9.)

Defendant notes that it served an interrogatory request asking Plaintiff to "[i]dentify all persons known by [Plaintiff] to have any knowledge regarding any of the material facts at issue in this case and describe the nature of each person's knowledge," yet Plaintiff failed to disclose Karau until the Third Amended Initial Disclosures. (*Id.* at 5-6 (citing Dkt. 142; Dkt. 142-3, Ex. 3 at 4-5).) Defendant contends that allowing Karau to testify would be problematic as she would "be in a position to offer substantive

6

evidence allegedly relevant to the fill level of McCormick's tins, one of the fundamental issues in this litigation." (*Id.* at 11.)

Plaintiff responded in its December 9, 2022 opposition that Karau's testimony would be for foundational and authentication purposes only. (Dkt. 144 at 1, 5, 14.) Plaintiff notes that all of the Documents were previously produced to Defendant at the beginning of this litigation, and one was marked by Defendant during a deposition. (*Id.* at 1, 3, 5-6, 10.) Plaintiff claims that the other two documents "show on their face that Ms. Karau took the measurements and the photographs contained in the documents" and that Karau "will testify only to the extent necessary for the three documents identified in the Amended Disclosure to be admitted into evidence at trial." (*Id.* at 1-2, 9-10, 16.) Plaintiff also stated, however, that "the matter 'to which Ms. Karau might testify' is nothing more than the foundation and authenticity of the three documents, e.g., that she took the pictures and **accurately weighed the tins**." (*Id.* at 14 (emphasis added).)

As to prejudice, Plaintiff contends that four recipients of the Documents have been deposed by Defendant and each could have been questioned about them during their depositions. (*Id.* at 10.) According to Plaintiff, excluding Karau as a witness would result in exclusion of the Documents and would be a harsh remedy as the untimely disclosure is harmless. (*Id*. at 1-2, 8-14, 17.) Plaintiff contends that it has offered Karau for deposition to cure any potential prejudice to Defendant, but that Defendant has refused to depose Karau. (*Id.* at 2, 12-13.)

On January 13, 2023, the Court held a hearing on the Motion ("January 2023 Hearing") and took the Motion under advisement. (*See* Dkts. 146, 149.) At the hearing,

7

it became clear that Defendant is not opposed to Karau authenticating the Documents, but rather, argued that Karau's testimony would likely encompass the analyses that she performed on Defendant's pepper tins, the conclusions she formed, and the reliability of her analyses. Specifically, Defendant contended that the Documents are substantive in nature and because they contain hearsay information, inclusive of Karau's measurements, findings, and conclusions, which only Karau can testify to, permitting Karau's testimony would inevitably require her to provide testimony that goes beyond foundation and authentication. (Dkt. 149 at 3:20-11:23.)[2] Defendant also argued that while it does not oppose stipulating to the Documents for purposes of authentication, it cannot stipulate to their admissibility because the Documents contain substantive evidence and hearsay information. (*Id.* at 11:19-13:2, 29:1-30:13.)

Plaintiff maintained that allowing Karau to testify would be harmless and non-prejudicial. (*Id.* at 14:8-28:16.) In response to the Court's questioning about Defendant's anticipated hearsay objection as to the Documents, Plaintiff stated:

> Well, I think I get around it – it's for present sense. She took the measurements and she took the pictures and then she recorded that. There's nothing else in between there. I think it comes in that way. And the photographs and the measurements, I think, are a little different. I think they both come in, but clearly with the photographs she's saying she took the pictures. That authenticates the photographs. I don't think there's much more to go there.

(*Id.* at 20:12-20.)

---

[2]  Citations to transcripts are given in a transcript page:line number format.

In response to the Court's question: "do you envision her testifying about, for example, how she conducted the testing and the measurements she took?", Plaintiff responded:

> I am going to have her testify – and I'm not trying to evade the question. I am going to have her testify to nothing more than what I need to do, as when at trial, based upon objections from Counsel, what I need to do to get these admitted.
>
> In response to objections from McCormick's counsel, if I have to go through and say, "What tins did you look at?" -- and we see them there – "What did you do?" and "Does this document" – "Did you record correctly your measurements?"
>
> If I have to go through that, I will go through that to lay a foundation, but if I don't have to go through that, I'll just have them admitted.

(*Id.* at 20:21-21:11.)

In other words, if Defendant's counsel objects to the Documents on grounds of hearsay, Plaintiff's counsel intends to elicit testimony from Karau about her testing and the results. Further, Plaintiff's counsel made clear that if Defendant objected to the Documents' admissibility, he would elicit testimony that Karau performed the testing "properly" or seek agreement from Defendant that there is a "reasonable basis" and "some support behind what's in -- what the substance of the document says." (*Id.* at 24:25-26:17.) Plaintiff's counsel also made clear that he believes "foundation" would include Karau testifying that she "took [the measurements] in a way that is reliable and is correct." (*Id.* at 26:18-23.)

9

B.  **Exclusion Is Warranted Because Plaintiff Seeks to Elicit Karau's Testimony About the Reliability and Accuracy of the Measurements Described in the Documents, Resulting in Harm to Defendant**

Regardless of Plaintiff's description of Karau's anticipated testimony as "foundational" in the Third Amended Initial Disclosures, the hearing made clear that Plaintiff really seeks to have Karau testify to overcome all challenges to admissibility, whether based on Federal Rule of Evidence 602 (personal knowledge), Rule 901 (authentication), or Rule 802 (rule against hearsay), as well as to the reliability of her measurements and whether she correctly recorded the data.  (*See* Dkt. 149 at 20:21-21:11, 24:25-26:17, 26:18-23.)  Plaintiff wants to be able to use the Documents at trial and believes it needs Karau's testimony to get them into evidence.  (*Id.* at 20:21-21:11.)  It is worth revisiting Rules 602 and 901, because the scope of Karau's anticipated testimony is relevant to whether Plaintiff's failure to timely disclose Karau is "harmless" for purposes of Rule 37(c)(1).[3]

The Court begins with Federal Rule of Evidence 602, as the Third Amended Initial Disclosures state that Karau's anticipated testimony would be "limited to foundation" of the Documents, "if necessary."  (Dkt. 142-1, Ex. 1 at 2.)  Rule 602 provides that "[a] witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter.  Evidence to prove personal knowledge may consist of the witness's own testimony."  Fed. R. Evid. 602.  In

---

[3]  Plaintiff did not argue that its failure to disclose Karau, who performed the analysis in May and June 2015, any time before September 2022 was timely or substantially justified.  The Court therefore focuses on harmlessness.

terms of admissibility, it is common to speak of laying sufficient "foundation" to meet the requirements of Rule 602. *See, e.g.*, *United States v. Ambursley*, 61 F.3d 901, at *3 (4th Cir. 1995) ("We conclude that the foundation laid was adequate to meet Federal Rule of Evidence 602's dictate that a witness have 'personal knowledge of the matter' before testifying to it."); *United States v. Donald*, 86 F. App'x 939, 942-43 (6th Cir. 2004) ("Donald's objection for lack of foundation implicates Federal Rule of Evidence 602 which states in pertinent part: "A witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter."); *Bertroche v. Mercy Physician Assocs., Inc.*, No. 18-CV-59-CJW-KEM, 2019 WL 4307127, at *17 (N.D. Iowa Sept. 11, 2019) ("Thus, if Dr. Perri is able to lay a proper foundation at trial, her damages calculations will not be excluded under Rule 602 for lack of personal knowledge.").

As for authentication, Federal Rule of Evidence 901 governs authentication or the identification of evidence and provides that a witness may testify "that an item is what it is claimed to be." Fed. R. Evid. 901(b)(1). "To authenticate a document, the proponent need only prove a rational basis for the claim that the document is what the proponent asserts it to be." *United States v. Long*, 857 F.2d 436, 442 (8th Cir. 1988) (citations omitted). The authentication requirement of Fed. R. Evid. 901 is satisfied when a party or their counsel concede the genuineness of a document. *See Resolution Tr. Corp. v. Eason*, 17 F.3d 1126, 1131 (8th Cir. 1994) ("First, RTC's authentication objection lacks merit. Counsel for RTC conceded the genuineness of these two exhibits, satisfying the authentication requirement of Fed. R. Evid. 901.").

The Court's analysis begins with Rule 901, based on Plaintiff's argument in its opposition that "[t]he disclosure of witnesses for the purpose of authenticating documents at trial is hardly surprising[,]" citing several cases where courts have permitted a witness to testify at trial for authentication purposes even where the witnesses' disclosure was untimely. (Dkt. 144 at 10-11 (citing *Smith v. Loudoun Cty. Pub. Sch.*, No. 1:15CV956 (JCC/TCB), 2016 WL 9943214, at *2 (E.D. Va. Jan. 21, 2016); *Moore v. BASF Corp.*, No. CIV.A. 11-1001, 2012 WL 4344583, at *3 (E.D. La. Sept. 21, 2012); *Quesenberry v. Volvo Grp. N. Am., Inc.*, 267 F.R.D. 475, 480-81, 482 (W.D. Va. 2010).) The problem with Plaintiff's reliance on these cases is that Karau's anticipated testimony is not limited to authentication.[4] Indeed, there does not appear to be any dispute as to the Documents' authenticity (*see* Dkt. 149 at 4:16-20, 10:19-11:23), and as counsel noted during the January 23 Hearing, there is no apparent reason why the recipients of the emails cannot authenticate them (*id.* at 12:8-13:2).

The Court turns to Rule 602, as Plaintiff describes Karau's anticipated testimony as "foundational." If the issue were truly foundational, the question would be whether Karau has sufficient personal knowledge of the Documents (and her analyses) to testify

---

[4] In contrast, Defendant stipulated to the admission of certain pepper tins to obviate the need to call the second witness identified for the first time in the Third Amended Initial Disclosures, where that witness's testimony was limited to the authenticity of certain unopened pepper tins he had purchased. (*See* Dkt. 140 at 4-5 ("The parties have since resolved their dispute regarding Mr. Nelson, based upon a proffer by Watkins's counsel indicating that his testimony would simply authenticate certain unopened tins of McCormick pepper that he purchased in 2015, and with McCormick stipulating to the admission of those tins without the need for Mr. Nelson's testimony."); *see also* Dkt. 142-1, Ex. 1 at 3; Dkt. 149 at 11:11-17.)

12

about them. *See* Fed. R. Evid. 602. But here, Plaintiff views Karau's "foundational" testimony as encompassing:

- the methodology Karau used for her testing (Dkt. 149 at 21:6 ("What did you do?"));

- the accuracy of Karau's measurements (Dkt. 144 at 14 (Plaintiff describing Karau's anticipated testimony as to "foundation and authenticity" as including testimony "that she took the pictures and accurately weighed the tins"));

- whether Karau correctly recorded her measurements (Dkt. 149 at 21:7-8) ("Did you record correctly your measurements?"); and

- the fact that Karau "took [the measurements] in a way that is reliable and is correct" (*id.* at 26:18-23).

These subjects go well beyond what is required to overcome a Rule 602 objection. And given Plaintiff's agreement that witnesses who did not perform the analyses cannot testify about them (Dkt. 149 at 22:18-21), the Court does not find it credible that Karau's testimony would be limited to that necessary to overcome Defendant's objections (*see* Dkt. 144 at 1-2 ("Ms. Karau will testify only to the extent necessary for the three documents identified in the Amended Disclosure to **be admitted into evidence at trial**.") (emphasis added); *see also* Dkt. 149 at 20:25-21:3) ("I am going to have her testify to nothing more than what I need to do, as when at trial, based upon objections from Counsel, what I need to do to get these admitted.")). Plaintiff has not identified any other witness who would testify as to the substance of the Documents or Karau's analyses. In sum, it is evident that Plaintiff intends to use Karau's self-styled "foundational" testimony to discuss the results of her May and June 2015 analyses and demonstrate their

13

reliability and accuracy, because Plaintiff apparently believes it has no other way to get the Documents or their substance before the jury.

Having identified the scope of Karau's anticipated testimony, the Court turns to whether Plaintiff's failure to timely disclose her is harmless. Defendant argues that it would be highly prejudicial to permit Karau to testify as to her methodology and results of her May and June 2015 analyses, as well as their reliability and accuracy, all of which constitute "substantive evidence allegedly relevant to the fill level of [Defendant's] tins, one of the fundamental issues in this litigation." (Dkt. 140 at 10-11.) At the January 23 Hearing, Defendant identified the following prejudice: (1) the passage of time and the fading of memories, (2) the need to re-depose witnesses to ask them questions about Karau, (3) the fact that Michelle Fehr, who received the email summaries from Karau and passed the information on to Mark Jacobs, Irwin Jacobs, and JR Rigley, has been retired for six years and lives in Utah and that Irwin Jacobs, who was Plaintiff's CEO at the time and requested the analyses, is deceased, and (4) that there is insufficient time for Defendant to rebut and critique Karau's analyses in view of the May 2023 trial date. (Dkt. 149 at 8:13-25, 9:5-12, 30:16-31:3.) In response, Plaintiff argues Defendant would not be prejudiced if Karau testifies because Defendant has been in possession of the Documents since the start of this case. (Dkt. 144 at 10-11.) Plaintiff also argues that any harm can be cured by deposing Karau. (*Id.* at 13-14.)

The Court first addresses Plaintiff's argument that Defendant cannot show prejudice because it has had the Documents since this case began. The Court is not persuaded. Defendant contends (and Plaintiff does not disagree) that Plaintiff has

14

produced "thousands of pages of documents" in this case. (Dkt. 149 at 6:17-19.) Plaintiff, not Defendant, bears the responsibility of formally disclosing witnesses, "including those that [Defendant] may be aware of through other discovery. [Defendant] is under no obligation to review [Plaintiff's] documents to learn of potential witnesses." *CNH Capital Am. LLC v. McCandless*, No. C05-2087, 2007 WL 1830819, at *4 (N.D. Iowa June 22, 2007) (citing *Troknya v. Cleveland Chiropractic Clinic*, 280 F.3d 1200, 1205 (8th Cir. 2002)). Numerous cases hold that a party is not required to deduce the individuals an opposing party expects to call as witnesses at trial based on a voluminous document production. *See, e.g.*, *United States ex rel. Higgins v. Bos. Sci. Corp.*, No. 11-cv-2453 (JNE/TNL), 2020 WL 968218, at *10 (D. Minn. Feb. 28, 2020) (rejecting plaintiff's argument that a witness was made known through discovery because the witness was referenced in "over 400" documents where it amounted to less than 2% of the 30,000 documents produced); *Taylor v. New York State Office for People with Dev. Disabilities*, 1:13-CV-740 (NAM/CFH), 2016 WL 2858856, at *6 (N.D.N.Y. May 13, 2016) ("Defendants were not required to cull the document production and assume that plaintiff would call at trial any number of the individuals mentioned therein."); *World Wide Ass'n of Spec. Programs v. Pure, Inc.*, No. 2:02-cv-00010 PGC, 2004 WL 5620058, at *5 (D. Utah July 20, 2004) (explaining that "[t]here is a significant difference between knowing that someone may have relevant testimony and that someone will be called to testify as a witness" and that parties are "entitled to know" who "will be a part of the trial"). Moreover, the fact that Defendant marked one of the Documents as a deposition exhibit did not eliminate Plaintiff's obligation to timely disclose Karau as a trial witness

(particularly when that exhibit did not identify Karau by name). *See also Ollier v. Sweetwater Union High Sch. Dist.*, 768 F.3d 843, 863 (9th Cir. 2014) ("That another witness has made a passing reference in a deposition to a person with knowledge or responsibilities who could conceivably be a witness does not satisfy a party's disclosure obligations. An adverse party should not have to guess which undisclosed witnesses may be called to testify.").

The Court therefore turns to the relevant factors: (1) the importance of the Documents; (2) Plaintiff's explanation for its failure to comply with the required disclosure; (3) the potential prejudice that would arise from allowing the material to be used . . .; and (4) the availability of a continuance to cure such prejudice. *See Fesenmaier*, 2021 WL 101193, at *22. Plaintiff has not made any argument as to the importance of the Documents, nor has Plaintiff sufficiently explained why it did not disclose Karau earlier in this case. This weighs against a finding of harmlessness.

As to prejudice, the Court agrees that Defendant will be prejudiced if Karau were permitted to testify about the analyses she performed in May and June 2015, even if Defendant deposed Karau. Over seven years have passed since Karau performed the testing; Irwin Jacobs, the CEO who requested the testing, died about two years ago; and Fehr, who seems to have been the conduit between Karau and Plaintiff's executives with respect to Karau's analyses, retired six years ago and is living in Utah. Moreover, Defendant states that it would need to re-depose other witnesses with respect to Karau's analyses, as well as explore other ways to rebut or critique her analysis. The Court finds that this prejudice cannot be cured by a continuance. While Defendant likely could

depose Karau before pretrial submissions are due in April 2023, Defendant would have an abbreviated amount of time to conduct any additional depositions and determine what, if any, expert analysis is necessary with regard to Karau's analyses. The Court cannot justify reopening discovery at this point to address Plaintiff's unjustified failure to disclose Karau when doing so would require Defendant to incur additional costs and likely require a continuance of the trial. *See Murphy by Murphy v. Harpstead*, Civ. No. 16-2623 (DWF/BRT), 2019 WL 6650510, at *4 (D. Minn. Dec. 6, 2019) ("Adherence to [scheduling] order deadlines is critical to achieving the primary goal of the judiciary: 'to serve the just, speedy, and inexpensive determination of every action.'") (citations omitted). Moreover, no continuance can cure the passage of time, fading memories, or the fact that Irwin Jacobs, who requested the testing and received the results, has passed away. *See Ramirez ex. rel. Ramirez v. Bexar Cnty., Tex.*, Civ. No. SA-10-CV-0296 FB (NN), 2011 WL 4565473, at *4 (W.D. Tex. Sept. 29, 2011) (noting that a "continuance cannot cure prejudice resulting from the passage of time"); *see also Hurd v. Univ. of Tx. Health Science Ctr. at S.A.*, Civ. No. SA-09-CA-645-FB, 2012 WL 13076699, at *2 (W.D. Tex. July 16, 2012) ("given that this case was filed almost three years ago, and the scheduling order has already been amended four times, the availability of a continuance to cure this prejudice is dubious at best").

In sum, Plaintiff has failed to meet its burden to show substantial justification or harmlessness. *See Nguyen v. IBP, Inc.*, 162 F.R.D. 675, 680 (D. Kan. 1995) ("The burden of establishing substantial justification and harmlessness is upon the party who is claimed to have failed to make the required disclosure."). The Court therefore prohibits

17

Plaintiff from calling Karau as a witness at trial. *See* Fed. R. Civ. P. 37(c)(1) ("If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial . . ."); *see also Ollier*, 768 F.3d at 863 (finding the district court did not abuse its discretion in concluding that untimely disclosed witnesses were excluded from testifying at trial given the costly and disruptive effects that would have resulted from allowing the witnesses to testify); *Niazi Licensing Corp. v. St. Jude Med. S.C., Inc.*, Case No. 17-cv-5096 (WMW/BRT), 2020 WL 1617879, at *2-4 (D. Minn. April 2, 2020) (affirming a magistrate judge's order, striking portions of plaintiff's expert reports that discussed facts that were not disclosed before the fact discovery deadline).

For all of these reasons, the Court grants the Motion, strikes paragraph (j) of Plaintiff's Third Amended Initial Disclosures, and precludes Plaintiff's proposed witness, Jacquelynn Karau, from testifying in this matter.

## IV.    ORDER

Accordingly, based on the files, records, and proceedings herein, **IT IS ORDERED** that:

1. Defendant McCormick & Company, Incorporated's Motion to Strike Watkins Incorporated's Third Amended Initial Disclosures and Exclude an Untimely Disclosed Witnesses [sic] (Dkt. 139) is **GRANTED**;

2. Plaintiff's proposed witness, Jacquelynn Karau, is **PRECLUDED** from testifying at trial; and

3. Paragraph (j) of Plaintiff's Third Amended Initial Disclosures (Dkt. 142-1, Ex. 1 at 2) is **STRICKEN**.

DATED: February 6, 2023                 *s/Elizabeth Cowan Wright*
ELIZABETH COWAN WRIGHT
United States Magistrate Judge